IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAROLD BUTLER, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 21 C 4472 |
| v. | ) |
| | ) Judge Virginia Kendall |
| INDIANA HARBOR BELT RAILROAD CO., | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Indiana Harbor Belt Railroad Company employed Darold Butler, a Black man, as a conductor engineer. In 2017, Butler requested leave under the Family and Medical Leave Act ("FMLA") to care for his sick child, who suffered from a chronic illness. Indiana Harbor granted his initial request, but later informed him that he had exhausted his FMLA leave and ordered him to return to work or face termination. The company set a return date of May 31, 2018. Butler missed work that day but showed up a few days later and mostly attended for the next two months. Nonetheless, Indiana Harbor terminated his employment. Butler sued the company for alleged race discrimination and violations of the collective bargaining agreement. (Dkt. 25). Indiana Harbor moved to dismiss for failure to state a claim. (Dkt. 26). For the following reasons, the motion is denied in part and granted in part. (*Id.*)

## BACKGROUND

Darold Butler, a Black man, worked as a conductor engineer for Indiana Harbor from 2015 to 2018. (Dkt. 25 ¶ 7). While employed there, he was a member of the Brotherhood of Locomotive Engineers and Trainmen ("BLET"), a railway workers union. (*Id.* ¶ 9). BLET and Indiana Harbor had executed a collective bargaining agreement and Development and Performance Accountability

1

Policy for Transportation Employees ("DAPA"). The documents together governed the disciplinary relationship between Indiana Harbor and its union employees through the relevant period. (*Id.* ¶¶ 9, 11). DAPA outlined three categories of offenses under its guidelines: (1) major offenses, defined as those "that warrant removal from service pending a formal hearing and possible dismissal from service for a single occurrence if proven responsible": (2) serious offenses, those that involve rule violations, poor performance, and violations of company policies; and (3) minor offenses, such as theft, drug use, speeding, violence in the workplace, and a disregard for the rights of employees or the company. (*Id.* ¶¶ 11–14). An employee could not be discharged without a hearing except in "serious cases." (*Id.* ¶ 15).

In 2017, Butler requested leave under the Family and Medical Leave Act to care for his sick child. (*Id.* ¶ 18). Indiana Harbor approved the initial request. (*Id.* ¶ 18). On May 30, 2018, Butler asked to extend his leave because his child was still sick. (*Id.* ¶ 19). Indiana Harbor informed Butler that his FMLA leave had been exhausted and asked him to report for work the next day. (*Id.* ¶ 20). Butler explained that he could not return to work because of his child's illness, and the next day, he did not come. (*Id.* ¶¶ 21, 23). Indiana Harbor marked him as off work, then "wrote him up," which triggers a layoff. (*Id.* ¶ 22). On June 3, four days later, Butler requested to be added back to the schedule and began working almost every day. (*Id.* ¶ 25). A hearing was held on July 19, 2018, to determine Butler's employment status. (*Id.* ¶ 29). After three hearings in early August, Indiana Harbor fired Butler from his position. (*Id.* ¶ 35).

Butler filed a race-discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a right-to-sue letter. (*Id.* ¶ 39). Butler then filed his first complaint in federal court, alleging that Indiana Harbor violated Title VI of the Civil Rights Act and the union's collective bargaining agreement. (Dkt. 1). Indiana Harbor moved to dismiss

2

for failure to state a claim. (Dkt. 11). It became clear during briefing that the complaint had a scrivener's error: Butler intended to bring his discrimination claim under Title VII, not Title VI. (Dkt. 18). This Court granted the motion to dismiss without prejudice so that Butler could correct this error and address other deficiencies identified. (Dkt. 24). Butler filed an amended complaint, clarifying that he is bringing a race-discrimination claim under Title VII (Count I) and a claim alleging a violation of the collective bargaining agreement (Count II).[1] (Dkt. 25). Indiana Harbor moved to dismiss both counts for failure to state a claim and that Count II should also be dismissed because this Court lacks jurisdiction to adjudicate a labor dispute under the Railway Labor Act. (Dkt. 26, 27).

## ANALYSIS

**I.    Title VII (Count I)**

Title VII makes it unlawful for an employer to "refuse to hire … any individual … because of such individual's race." 42 U.S.C. § 2000e-2. A plaintiff can prove race discrimination either directly or indirectly. *McKinney v. Office of Sheriff of Whitely Cnty.*, 866 F.3d 803, 807 (7th Cir. 2017). The direct method requires a plaintiff to show "that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). The indirect method permits "a plaintiff to prove discrimination by using the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McKinney*, 866 F.3d at 807; *see also Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499–500 (7th Cir. 2017) ("The *McDonnell Douglas* framework is just 'a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence—evidence that similarly

---

[1] Although Butler sometimes refers to Count II as a "breach of contract" claim, the substance of the complaint makes clear that the claim is one for a violation of the collective bargaining agreement. His brief states as much: "Plaintiff's Count II alleges that Defendant breached the collective bargaining agreement it had with the Brotherhood of Locomotive Engineers and Trainmen by dismissing Plaintiff outside of the agreed policies." (Dkt. 31 at 8).

situated employees not in the plaintiff's protected class were treated better—would permit a jury to infer discriminatory intent.'" (quoting *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015))).

This case is at the motion-to-dismiss stage. The significance of this fact has not been considered by the parties, but several precedents—omitted from both parties' briefs—clarify what a plaintiff must plead to state a plausible race-discrimination claim. *See* Fed. R. Civ. P. 8(a), 12(b)(6). Both parties assume that the Supreme Court's seminal opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), say everything worth knowing about the pleading standard. It is not that simple. Prior to those cases, the Supreme Court decided *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). There, Akos Swierkiewicz, a 53-year-old Hungarian man, sued his employer for allegedly terminating his employment based on national origin and age. *Id.* at 509. The district court dismissed his case, and the Second Circuit affirmed because he did not allege facts showing a prime face case of discrimination under *McDonnell Douglas*. *Id.* The Supreme Court unanimously reversed. "The prima facie case under *McDonnell Douglas*," it emphasized, "is an evidentiary standard, not a pleading requirement." *Id.* at 510. The complaint easily satisfied Rule 8(a) because it gave "respondent fair notice of the basis for petitioner's claims." *Id.* at 514. Swierkiewicz alleged all the required information: termination on the basis of a protected trait, the events leading to the termination, and the relevant dates. *Id.*

Shortly after *Swierkiewicz*, the Court refined pleading requirements more generally. *See Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662. Under the new standard, a court accepts factual allegations as true and draws all reasonable inferences in favor of the plaintiff, then assesses whether the complaint states a plausible claim to relief. *Twombly*, 550 U.S. at 570. A claim has plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A]llegations in the form of legal conclusions are insufficient" to survive a motion to dismiss, as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678).

But the Court never overturned *Swierkiewicz*—indeed, it cited the decision favorably in *Twombly*, 550 U.S. at 556. The Seventh Circuit has interpreted this lack of repudiation to mean that *Swierkiewicz* is still good law. *Swanson v. Citibank, N.A.*, handed down only a year after the pleading-standard change, declared that "it will not be any more difficult today for a plaintiff to meet that burden [of establishing discrimination] than it was before the [Supreme] Court's recent decisions." 614 F.3d 400, 405 (7th Cir. 2010).[2] And *Graham v. Board of Education* more recently reaffirmed that "[n]either *Twombly* nor *Iqbal* questions the continuing force of *Swierkiewicz*." 8 F.4th 625, 627 (2021). To state a plausible claim for relief, then, a plaintiff need only state the type of discrimination, by whom, and when. *Swanson*, 614 F.3d at 405. "It is enough for a plaintiff to

---

[2] The *Swanson* Court squared *Twombly* and *Iqbal*'s plausibility requirement with prior case law in this extended explanation:

> A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what "really" went on in this plaintiff's case. A more complex case involving financial derivatives, or tax fraud that the parties tried hard to conceal, or antitrust violations, will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.

*Id.* at 404–05.

5

assert that [he] was treated worse because of protected characteristics." *Graham*, 8 F.4th at 627. Demanding all the facts to prove this allegation would be beyond the function of a complaint. *Id.*

Admittedly, there may be tension in the Supreme Court's caselaw—as well as perhaps in the Seventh Circuit's—but this Court cannot resolve any such tension (to the extent it exists). *Swierkiewicz*, *Swanson*, and *Graham* bind this Court even if general language from *Twombly* and *Iqbal* could be interpreted as supporting a different outcome.

Here, the Amended Complaint provides all the necessary allegations to plead a plausible claim of racial discrimination. Butler identified himself as a member of a protected class as a Black man, (Dkt. 25 at ¶ 7); that he "had performed his job duties in a satisfactory manner" (*Id.* ¶ 43); that Indiana Harbor took an adverse employment action by terminating his employment, (*Id.* ¶ 46); and that "[o]ther non-African American employees … were not terminated for the same or similar absences," (*Id.* ¶ 48). These facts state the type of discrimination (race), by whom (Indiana Harbor), when (2018), and what happened (Butler's termination for requesting additional leave). *See Swanson*, 614 F.3d at 405. In short, Butler asserted that he was treated worse because he was a Black man. *See Graham*, 8 F.4th at 627. Nothing more is necessary.

Indiana Harbor notes that other possibilities exist for why it terminated Butler's employment, for instance, the fact that he requested additional leave to care for his chronically sick child. In that event, the company's decision might be morally objectionable, but not racially discriminatory. Butler, however, does not need to prove his case—that will come soon enough. He must only plead facts plausibly showing he could prevail and putting Indiana Harbor on notice of the allegations. He has done both. At summary judgment, these alleged facts alone will no longer suffice. Butler will need to put forth evidence to explain, among other things, how he performed

his job satisfactorily and how non-Black employees were treated more favorably when seeking similar family leave. For now, though, his race-discrimination claim survives.[3]

## II. Collective Bargaining Agreement (Count II)

### A. Legal Standard

Indiana Harbor challenges this Court's statutory jurisdiction under Rule 12(b)(1). The Court accepts factual allegations as true and draws all reasonable inferences in favor of the plaintiff, then assesses whether the complaint states a plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021). A claim has facial plausibility under Rule 12(b)(1) when the "well-pleaded factual allegations plausibly suggest a claim of subject matter jurisdiction." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).

### B. The Railway Labor Act

The Railway Labor Act establishes the framework for resolving railroad labor disputes. *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 562 (1987). There are two types of relevant disputes under the RLA: major disputes and minor disputes. *Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 394 (7th Cir. 2011). "Major disputes relate to the formation of collective bargaining agreements or efforts to secure them." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (cleaned up) (quoting *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302 (1989)). By contrast, "minor disputes" involve disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153. They concern issues "'grounded in' a collective bargaining

---

[3] For now, the request for punitive damages also survives because it is linked to the Title VII claim more generally. Indiana Harbor is free to raise its point again, on summary judgment, that Butler cannot produce sufficient evidence.

agreement." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831–32 (7th Cir. 2014) (quoting *Hawaiian Airlines*, 512 U.S. at 256).

The distinction between a major dispute and a minor dispute is significant because federal courts only have jurisdiction over major disputes. *Brown v. Illinois Central R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001). Minor disputes, on the other hand, must "be resolved in arbitration before an adjustment board established by the employer and union rather than in court." *Carlson*, 758 F.3d at 831. Moreover, there is a presumption that a dispute is minor unless shown to be otherwise. "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is *arguably justified* by the terms of the parties' collective-bargaining agreement." *Consolidated Rail Corp.*, 491 U.S. at 307 (emphasis added).

Butler's claim is a "minor dispute" under the RLA and, thus, must be dismissed for lack of jurisdiction. There can be no doubt that it involves a dispute "grounded in" the collective bargaining agreement because that is exactly what Butler pleaded. The agreement applied to Butler. (Dkt. 25 ¶ 52). Indiana Harbor breached the terms of the agreement in several ways. (*Id.* ¶ 55). Now Butler seeks legal redress for these breaches. (*Id.* ¶¶ 50–60). At no point, though, is the integrity or formation of the agreement questioned.[4] This Court cannot then—consistent with the RLA—adjudicate this "minor dispute."

---

[4] The various cases cited by Butler involve claims brought under the Labor Management Relations Act, another foundational labor law but not one that applies to railroads or supersedes the RLA. (Dkt. 31 at 8–9).

## **CONCLUSION**

For these reasons, Indiana Harbor's motion to dismiss is denied in part (Count I) and granted in part without prejudice (Count II). (Dkt. 26).

_____
Virginia M. Kendall
United States District Judge

Date: November 9, 2022