THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAROLD BUTLER, | ) |
| *Plaintiff,* | ) No. 21 C 4472 |
| v. | ) Judge Virginia M. Kendall |
| INDIANA HARBOR BELT RAILROAD CO., | ) |
| *Defendant.* | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Darold Butler was employed by Defendant Indiana Harbor Belt Railroad Company ("Indiana Harbor") as a locomotive engineer from 2015 until he was terminated in August 2018. Butler initiated this lawsuit against Indiana Harbor, bringing claims of employment discrimination and violations of the collective bargaining agreement governing his employment. Now before the Court is Indiana Harbor's Motion for Summary Judgment. (Dkt. 60). For the following reasons, Indiana Harbor's Motion [60] is granted.

**BACKGROUND**

**I.    Factual Background**

**A.  The Parties**

Indiana Harbor is a freight railroad company that operates in Northern Indiana and Eastern Illinois. (Dkt. 62 ¶ 1). On August 31, 2015, Darold Butler, a Black man, began working as a locomotive engineer at Indiana Harbor. (*Id.* ¶ 2). Locomotive engineers are responsible operating the trains, causing them to move. (*Id.* ¶ 22). Without a locomotive engineer available to do his job, Indiana Harbor's trains cannot move. (*Id.*). Throughout his employment, Butler was a member of the Brotherhood of Locomotive Engineers and Trainmen ("BLET"). (*Id.*).

1

### B. Indiana Harbor's Policies

Throughout Butler's employment, Indiana Harbor maintained a Train and Engine Service Employee Availability Policy ("Availability Policy") which set out the availability requirements for locomotive engineers like Butler. (Dkt. 62 ¶ 14). The Availability Policy requires locomotive engineers to make themselves available to work a certain number of days (referred to as "starts") during each 22-day period (referred to as a "start bracket"). (*Id.* ¶ 15). Specifically, the Availability Policy requires locomotive engineers to be available for a minimum of 18 starts with at least 16 hours of overtime, 19 starts with at least 8 hours of overtime, or 20 starts without overtime during each 22-day start bracket. (*Id.* ¶ 16).

After receiving each employee's availability for a given start bracket, Indiana Harbor creates a work schedule based on availability and seniority. (*Id.* ¶ 17). If after the schedule is released, an engineer cannot work a scheduled shift, the engineer is required to call a "Crew Caller" within a set time to report the absence and identify whether there was some justification for it, such as approved time off pursuant to the Family and Medical Leave Act ("FMLA"). (*Id.* ¶ 18). The Crew Caller then reviews the schedule to see if someone else can cover the shift, in which case the engineer can take the day off without penalty. (*Id.* ¶ 19). If, however, no one is available to cover the absence, the engineer is considered to have "forced a layoff" and may be written up for a "failure to protect the service of the carrier." (*Id.*). Crew Callers report all "forced layoffs" to the Crew Call Manager. (*Id.* ¶ 20). The Crew Call Manager regularly reviews employee attendance for compliance with the Availability Policy and reports noncompliant employees to the Manager of Human Resources and Labor Relations ("HR Manager"). (*Id.* ¶¶ 23, 27). The HR Manager then sends letters to noncompliant employees, notifying them that they may be subject to discipline. (*Id.* ¶¶ 21, 26–27).

2

Failure to protect the service of the carrier is considered misconduct, governed by Indiana Harbor's Development and Performance Accountability Policy for Transportation Employees ("DAPA Policy"), which outlines the progressive discipline policy for continuing policy violations. (*Id.* ¶ 29). Violations accrued within 180 days are handled in the following progression:

- **1st Event** – (A) Waiver, Training Day; or (B) Formal Hearing, Training Day and Three days Actual Suspension.
- **2nd Event** – Waiver or Formal Hearing; and Suspension of 5–30 days.
- **3rd Event** -- Waiver or Formal Hearing; and Suspension of at least 30 days (up to and including termination).

(*Id.* ¶ 29). Union employees subject to a formal hearing are represented by BLET personnel and are given an opportunity to explain their absences. (*Id.* ¶ 30).

### C. Butler's Availability Policy Violations

Only five months into his employment with Indiana Harbor, Butler failed to satisfy the Availability Policy requirements for the January 22, 2016 to February 21, 2016 start bracket. (*Id.* ¶ 32). In accordance with the DAPA Policy, Indiana Harbor sent Butler a letter counseling him on his noncompliance. (*Id.*). About three months later, Butler again failed to meet the Availability Policy requirements for the May 22, 2016 through June 21, 2016 start bracket as well as the June 22, 2016 through July 21, 2016 start bracket. (*Id.* ¶ 33). Indiana Harbor conducted a formal hearing regarding Butler's noncompliance and, as a result, Butler received two separate suspensions. (*Id.* ¶ 34).

About a year later, on July 7, 2016, Butler failed to protect the service of the carrier when he failed to report for work on a shift for which he was required to be available. (*Id.* ¶ 35). Butler waived his rights to a formal hearing about his July 7 absence and received counseling and training. (*Id.*). Several months later, Butler again failed to meet the Availability Policy requirements for the February 22, 2017 through March 21, 2017 start bracket. (*Id.* ¶ 36). Butler received counseling

after this policy infringement. (*Id.*). Later that year, on August 19, 2017, Butler failed to protect the service of the carrier when he called off work outside of the appropriate timeframe to do so. (*Id.* ¶ 37). Indiana Harbor held a formal hearing about Butler's continued policy violations and, in turn, required Butler to participate in an additional coaching session. (*Id.* ¶ 38).

### D. Butler's FMLA Usage

On September 7, 2016, Butler submitted a request for intermittent FMLA leave due to his son's health condition. (*Id.* ¶ 39). His son's doctor determined that he needed 2–12 days of FMLA leave per year. (*Id.*). Nevertheless, Indiana Harbor acquiesced when Butler decided take 12 weeks of FMLA leave in 2017—the maximum amount of time permitted under the law for eligible employees. (*Id.* ¶¶ 40–41). In February 2018, Butler re-certified his need for FMLA leave, stating that he required 1–2 days of leave per month. (*Id.* ¶ 42). Indiana Harbor later notified Butler that he was taking far more leave days than he had been authorized to use, and asked Butler to provide additional documentation to justify his use of FMLA leave. (*Id.* ¶ 42). On May 30, 2018, Butler stated his intent to use the maximum amount of FMLA leave authorized by law, despite his ineligibility for such. (*Id.* ¶ 43). On May 31, Indiana Harbor mailed a letter to Butler notifying him of his overuse of FMLA leave and renewing its request for additional documentation to justify his need for and use of leave days. (*Id.*). Butler never submitted additional documentation supporting his use of FMLA leave and, (*Id.* ¶¶ 44–45).

### E. Butler's Continued Availability Policy Violations

On May 31, 2018, Butler called off of his assigned shift, alerting the Crew Caller that he intended to extend his FMLA leave. (*Id.* ¶ 47). The Crew Caller informed Butler that he had exhausted his FMLA leave and that no one was available to cover his shift, so he would be subject to discipline if he did not report for work. (*Id.* ¶ 48). Butler called off anyway and did not return

4

to work until June 3, 2018. (*Id.* ¶ 49). Subsequently, Butler was charged with failing to protect the service of the carrier when he forced a layoff from May 31 through June 3, 2018. (*Id.* ¶ 50). Indiana Harbor conducted a formal hearing and ultimately suspended Butler for three days and ordered him to complete another training. (*Id.*).

A few weeks later, on June 22, 2018, Butler again called off of work. (*Id.* ¶ 52). The Crew Caller advised Butler that there was no one available to cover his shift and that he would be subject to discipline if he did not report to work. (*Id.*). Butler nevertheless did not report to work. (*Id.* ¶ 53). Once again, he was charged with failing to protect the service of the carrier when he forced a layoff on June 22. (*Id.* ¶ 54). At the ensuing hearing, the hearing officer granted Butler a recess to obtain a doctor's note supporting his assertion that he was sick on the day in question. (*Id.* ¶ 55). Butler did not provide any such documentation. (*Id.*). Accordingly, Indiana Harbor issued Butler a 30-day suspension, in keeping with the DAPA Policy. (*Id.* ¶ 56).

On July 2, 2018, Butler again called off work, stating that his son was sick. (*Id.* ¶ 59). He remained off work through July 7, 2018. (*Id.*). Indiana Harbor again charged Butler with failure to protect the service of the carrier and conducted a formal hearing. (*Id.* ¶¶ 61–62). Butler did not provide any documentation substantiating the stated reason for his absence. (*Id.* ¶ 62). While Indiana Harbor conducted its investigation into the July 2 absence, Butler accumulated additional unexcused absences between July 2 and July 15, for which Indiana Harbor conducted formal hearings. (*Id.* ¶¶ 67–72).

During its investigation into Butler's noncompliance with the Availability Policy, Indiana Harbor learned that on July 2, 2018—the day Butler claimed he was absent from work because of his son's illness—Butler's son played in multiple baseball games as part of a travel team for which Butler served as the co-founder and coach. (*Id.* ¶ 63). During the hearing, when asked whether he

5

attended his son's baseball tournament from July 2, 2018 through July 7, 2018, Butler refused to answer the question. (*Id.* ¶ 64). After the hearing, Indiana Harbor determined that Butler was absent without permission from July 2–5, 2018. (*Id.* ¶ 66). Because this was Butler's third offense in 35 days, Indiana Harbor terminated Butler's employment in accordance with the DAPA Policy. (*Id.*).

Butler, through his union representative, filed four separate appeals of the findings and discipline assessed for his various absences. (*Id.* ¶ 74). After reviewing and considering each appeal, Indiana Harbor denied the appeals and upheld the discipline it imposed. (*Id.* ¶ 75). On March 13, 2020, Plaintiff filed a Notice of Intent to Appeal to the National Railroad Adjustment Board ("NRAB"). (*Id.* ¶ 76). The NRAB reviewed and affirmed Indiana Harbor's findings regarding Butler's conduct. (*Id.* ¶ 77). At no point during his many hearings and appeals did Butler complain about racial discrimination. (*Id.* ¶ 78).

## II. Procedural Background

In November 2018, Butler filed a charge (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging that Indiana Harbor discriminated against him on account of his race. (Dkt. 62 ¶ 4). On May 26, 2021, the EEOC dismissed the Charge and issued Butler a right to sue letter. (*Id.* ¶ 5). Butler timely filed his Complaint, which he later amended, bringing claims of racial discrimination, in violation of Title VII of the Civil Rights Act, and breach of contract, based on violations of the collective bargaining agreement. (Dkts. 1, 25). The Court granted Indiana Harbor's motion to dismiss the breach of contract claim. Indiana Harbor now moves for summary judgment on Butler's discrimination claim. (Dkt. 60).

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6

56(a); *Med. Protective Co. of Fort Wayne v. Am. Int'l Specialty Lines Ins. Co.*, 990 F.3d 1003, 1008 (7th Cir. 2021). The Court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). "A genuine issue of material fact exists only if 'there is sufficient evidence'" for a jury to return a verdict for the nonmoving party. *BirchRea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Speculation is not sufficient to survive summary judgment; there must be evidence." *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021) (cleaned up and internal citations omitted).

## DISCUSSION

Title VII bars employers from "discharg[ing] any individual … because of such individual's race." 42 U.S.C. § 2000e-2(a). To survive summary judgment on an employment discrimination claim, a plaintiff must first make a prima facie showing of discrimination by providing evidence that "(1) [he] is a member of a protected class, (2) [he] was meeting the defendant's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) similarly situated employees who were not members of [his] protected class were treated more favorably." *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020)). Under burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), if a plaintiff makes the requisite prima facie showing, "the burden shift[s] to the [employer] to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Lewis* 36 F.4th at 759 (quoting *Tyburski*, 964 F.3d at 598). Courts in this Circuit evaluate Title VII claims by considering whether a reasonable "factfinder [could] conclude that the plaintiff's race … caused

the discharge." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019).

The parties do no dispute that Butler is a member of a protected class, nor do they dispute that he suffered an adverse employment action. (Dkt. 69 at 2; Dkt. 67 at 16). Thus, the Court will focus its analysis on the second and forth prongs of the *McDonnell Douglas* framework.

I.      **Butler Failed to Meet Indiana Harbor's Legitimate Expectations**

Butler claims that Indiana Harbor terminated him because of his race, while Indiana Harbor points to a long history of missed starts to show cause for dismissal. Attendance is an essential and expected element of employment: "an employer is permitted to treat regular attendance as an essential job function and need not accommodate erratic or unreliable attendance." *EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943, 948–49 (7th Cir. 2001). There is nothing novel about requiring attendance in employment as "[i]t should not require saying that" "attendance is [generally] a requirement of a job." *Waggoner v. Olin Corp.,* 169 F.3d 481, 483 (7th Cir. 1999).

It is undisputed that Butler was not meeting Indiana Harbor's expectations about his availability and attendance as set forth in the Availability Policy, (Dkt. 62 ¶¶ 11–15), and his absences were not without consequence. On four separate occasions in 2018 Butler failed to protect the service of the carrier—meaning the trains Indiana Harbor assigned Butler to work on could not move and, instead, sat idle. *Id*. Butler, who was entitled to one to two days of FMLA leave per month, wrongfully sought to avail himself of several weeks of leave to which he was not entitled. Indiana Harbor complains at length that while Butler was claiming FMLA leave to care for his sick son, he was really travelling to attend his son's baseball games. Butler's purported deceit, though distasteful, is irrelevant. The undisputed facts are that Butler claimed all the FMLA leave to which he was entitled, and Indiana Harbor refused to give him more. When Butler declined to

8

provide additional documentation justifying his need for additional leave, and failed to make himself available for work, he was fired. Simply put, Butler failed to meet Indiana Harbor's legitimate expectation that he show up for work. This fact alone is sufficient to defeat Butler's claim of discrimination.

    II.    **Butler Fails to Identify a Similarly Situated Person**

Butler's claim also fails because he does not identify any employees outside of his protected class who were similarly situated yet treated more favorably. Instead, Butler vaguely asserts that Indiana Harbor "removed him from service, and levied charges against him, while not writing up other engineers in a similar position." (Dkt. 68 at 7). But Butler's unsubstantiated, self-serving assertions cannot save the day at summary judgment. *Phillips v. Baxter*, 2024 WL 1795859, at *3 (7th Cir. Apr. 25, 2024) ("speculative inferences are insufficient to defeat summary judgment"). For this additional reason, Butler fails to make a prima facie showing of employment discrimination. Thus, Indiana Harbor is entitled to summary judgment.

## CONCLUSION

For these reasons, Indiana Harbor's Motion for Summary Judgment [60] is granted.

Virginia M. Kendall
United States District Judge

Date: November 20, 2024

9